UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALVERTA STEWART<br><br>                    Plaintiff,<br><br>          - against -<br><br>METROPOLITAN LIFE INSURANCE<br>COMPANY<br>                    Defendant. | **MEMORANDUM<br><u>OPINION & ORDER</u>**<br><br>21 Civ. 8092 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

> In this putative class action, Plaintiff Alverta Stewart brings a breach of contract claim against Defendant Metropolitan Life Insurance Company ("MetLife"). The Complaint alleges that MetLife breached its obligations under Federal Employees' Group Life Insurance ("FEGLI") policies by failing to pay Stewart and other members of the putative class proceeds from FEGLI policies in compliance with the statutory order of precedence set forth in 5 U.S.C. § 8705(a). (Cmplt. (Dkt. No. 1) ¶ 54)

> MetLife has moved to dismiss pursuant to (1) Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction; and (2) Fed. R. Civ. P. 12(b)(6) for failure to state a plausible breach of contract claim. (See Def. Mot. (Dkt. No. 26))

> For the reasons stated below, MetLife's motion to dismiss will be denied.

# BACKGROUND

I.    **FACTS**[1]

A.    **Allegations Regarding Alverta Stewart**

Plaintiff Alverta Stewart resides in Houston, Texas.  (Cmplt. (Dkt. No. 1) ¶ 1)
Stewart's sister, Arvenell Flowers, died on October 3, 2019.  (Id. ¶ 13)  Flowers was a retired
federal employee who had worked at a Veterans Affairs hospital in Houston.  Through FEGLI,
she had a $12,000 life insurance policy.  (Id.)

The statute establishing FEGLI sets out a statutory order of precedence for how
insurance benefits are to be paid out when a participating employee dies.  See 5 U.S.C.
§ 8705(a).  The statute provides that

> the amount of group life insurance [. . .] in force on an employee at the date of his
> death shall be paid, on the establishment of a valid claim, to the person or persons
> surviving at the date of his death, in the following order of precedence:
>
> First, to the beneficiary or beneficiaries designated by the employee [. . . ].
>
> Second, if there is no designated beneficiary, to the widow or widower of
> the employee.
>
> Third, if none of the above, to the child or children of the employee and
> descendants of deceased children by representation.
>
> Fourth, if none of the above, to the parents of the employee or the survivor
> of them.
>
> Fifth, if none of the above, to the duly appointed executor or administrator
> of the estate of the employee.
>
> Sixth, if none of the above, to other next of kin of the employee entitled
> under the laws of the domicile of the employee at the date of his death.

Id.

---

[1]  The Court's factual statement is drawn from the Complaint.  Well-pled facts in a complaint are
presumed true for purposes of resolving a motion to dismiss.  See Kassner v. 2nd Ave.
Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

At the time of Flowers' death, her "designated beneficiary had predeceased her, she was not married . . . (she had divorced in 1975), she had no children, [and] both [of] her parents [had] pre-deceased her." "[N]o estate was opened after her death." (Cmplt. (Dkt. No. 1) ¶ 14) According to Plaintiff, these facts establish that no one referenced in the first five categories of the statutory order of precedence is available to receive the proceeds of the Flowers FEGLI policy. (Id. ¶ 15) Plaintiff Stewart – as Flowers' sister – contends that she is entitled to the proceeds of the policy under the sixth category, which refers to "other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death." (Id. ¶ 16 (citing Tx. Estates Code § 201.001(e) ("If neither the person's father nor mother survives the person, the person's entire estate passes to the person's siblings and the siblings' descendants."))

To help pay the expenses associated with Flowers' funeral, Stewart executed an irrevocable assignment of $8,055 of the $12,000 in FEGLI proceeds to a funeral home.[2] Stewart retains a $3,945 interest in the proceeds from Flowers' FEGLI policy. (Id. ¶ 17)

At some point not specified in the Complaint, Stewart submitted a claim for the proceeds from Flowers' FEGLI policy, and "provided all information requested on the form and included a certified copy of Ms. Flowers' death certificate." (Id. ¶ 18)

According to Plaintiff, at the time she submitted her claim to MetLife, no one had been appointed to serve as the executor or administrator of her sister's estate. MetLife was thus required to "move[] on to the sixth position [in the statutory order of precedence]." (Id. ¶ 22) But Plaintiff alleges that MetLife instead "simply refused to move to the sixth position of

_____

[2] The funeral home executed an irrevocable assignment of the $8,055 to Lincoln Factoring, LLC. (Id. ¶ 17)

precedence and demanded that Plaintiff open an estate (and therefore qualify under the fifth

order of precedence)."  (Id.)

    Plaintiff goes on to allege that MetLife sent her a series of letters demanding that

she open an estate and initiate a probate proceeding.  In a November 2, 2019 letter, MetLife's

Office of Federal Employees Group Life Insurance ("OFEGLI") Claims Processing Center

states:  "If Ms. Flowers does not have a surviving spouse, was not survived by children or

descendants of any deceased children, and was not survived by parents, we will pay the

insurance benefits to the estate."  (Id. ¶¶ 19-20)  MetLife further states that it needs "[o]ne

certified copy of the court appointment papers naming a personal representative for Arvenel[l]

Flowers's estate.  Please note that we cannot process payment to the personal representative

named under Arvernel[l] Flowers's Will unless the Will is probated."  (Id. (emphasis removed))

The letter warns that if MetLife "do[es] not receive the completed claim form and the requested

information we will be unable to issue payment of the FEGLI benefits."  (Id. ¶ 21 (internal

quotation marks omitted))

    In a December 4, 2019 letter to Stewart, MetLife repeats that "[s]ince the Insured

does not have a surviving spouse, children, or descendants of any deceased children and was not

survived by parents, we will pay the insurance benefits to the estate."  (Id. ¶ 23 (internal

quotation marks omitted))  Stewart complains that in this December 4, 2019 letter, MetLife again

"wrongfully require[s] Plaintiff to open an estate in order to claim Ms. Flowers' FEGLI benefits,

ignoring that the sixth position in the order of precedence – which Plaintiff occupies – presumes

that no estate has been opened."  (Id. ¶ 26)

    The Complaint further alleges that in a February 24, 2020 letter, MetLife

"acknowledged that a[n] estate need not be opened for benefits to be paid," but "nevertheless

demanded that Plaintiff initiate probate court proceedings to obtain a 'Muniment of Title' before Defendant would process Plaintiff's claim[.]" (Id. ¶ 27)[3]

In alleging breach of contract, Plaintiff contends that "[p]ursuant to the 'mandatory, inflexible' order of precedence in 5 U.S.C. § 8705(a), Defendant was required to pay Plaintiff, Ms. Flowers' next of kin under Texas law, Ms. Flowers' FEGLI benefits." (Id. ¶¶ 29, 54) Plaintiff further alleges that MetLife's failure to pay her the FEGLI policy proceeds pursuant to the sixth order of preference, and to do so within a year of Flowers' death, violates 5 U.S.C. § 8705(b).

Section 8705(b) provides that

[i]f, within 1 year after the death of the employee, no claim for payment has been filed by a person entitled under the order of precedence named by subsection (a) of this section, or if payment to the person within that period is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if the person had predeceased the employee, and the payment bars recovery by any other person.

(Id. ¶ 32 (quoting 5 U.S.C. § 8705(b)) According to Plaintiff, MetLife's failure to pay her the proceeds of the FEGLI policy within a year of Flowers' death breached the FEGLI policy, because "any person higher than Plaintiff . . . in the order of precedence [should have been] presumed to have predeceased [Flowers]." (Id. ¶ 53)

**B.    Class Allegations**

As to the putative class, Plaintiff alleges "upon information and belief" that MetLife "routinely fails to follow the order of precedence in processing and paying claims." (Id. ¶ 12) "Defendant refuses to pay claims beyond the 'fifth' step in the order of precedence and

---

[3]  According to Plaintiff, "[a] muniment of title is a Texas-specific mechanism where a decedent's will is filed for probate and the court recognizes the will but does not appoint an executor to administer the estate."  (Pltf. Opp. (Dkt. No. 31) at 10 n.5 (citing Tex. Est. Code § 257.001, et seq.))

wrongfully demands [any] 'other next of kin of the employee' open an estate for a deceased

employee or initiate probate court proceedings before it will process such a claim." (Id.)

    The putative class is

> [a]ll kin who filed a claim with Defendant for payment of FEGLI benefits upon
> the death of an insured employee, whose claim was not paid because no estate or
> probate proceedings were opened for the deceased insured, and where no other
> claim for benefits was received by Defendant within 1 year after the death of the
> employee. Excluded from this Class are Defendant, any entity in which
> Defendant has a controlling interest, any entity which has a controlling interest in
> Defendant, and Defendant's employees, legal representatives, assigns, and
> successors.

(Id. ¶ 36 (footnote omitted))

    Plaintiff submits that a class action is appropriate here because: (1) although "the

precise number of class members is unknown to Plaintiff," it is "likely that there are thousands of

class members nationwide," and accordingly joinder is impractical; (2) "Plaintiff will fairly and

adequately represent and protect the class members' interests"; (3) counsel are competent and

have experience in class actions; (4) Plaintiff's claims "are typical of the class"; (5) "[c]ommon

questions of law and fact exist as to all members of the class and predominate over questions

affecting individual members of the class"; and (6) "the financial interest of each individual class

member is relatively small, making it economically impracticable to pursue remedies other than

by a class action." (Id. ¶¶ 35-48)

## II. <u>PROCEDURAL HISTORY AND METLIFE'S POST-COMPLAINT PAYMENTS</u>

    The Complaint was filed on September 29, 2021. (Cmplt. (Dkt. No. 1))

    On November 23, 2021, MetLife sent Plaintiff a check for $3,984.45, reflecting

her interest in the proceeds of the FEGLI policy, plus $39.45 in interest. (Cohen Decl., Ex. 8

(Dkt. No. 28-8) at 2-3)[4]  On December 1, 2021, MetLife sent a check for $8,135.56 to Lincoln

Factoring, LLC, the funeral home's assignee.  (Id., Ex. 9 (Dkt. No. 28-9) at 2; Cmplt. (Dkt. No.

1) ¶ 17)

   In a December 13, 2021 letter to MetLife, Plaintiff rejected the check sent to her,

characterizing it as an "offer to settle her claim on an individual basis."  (Cohen Decl., Ex. 10

(Dkt. No. 28-10) at 2)  In her letter, Plaintiff states that she "intends to continue to pursue this

case on behalf of the class."  (Id.)

   On May 27, 2022, MetLife moved to dismiss (see Dkt. No. 26), arguing that (1)

Plaintiff's claim is moot, and therefore the Court lacks subject matter jurisdiction; and (2) the

Complaint does not state a plausible claim for breach of contract.  (Def. Br. (Dkt. No. 27) at 7-8)

## DISCUSSION

## I. LEGAL STANDARDS

### A. Rule 12(b)(1)

   "Determining the existence of subject matter jurisdiction is a threshold inquiry[,]

and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when

the district court lacks the statutory or constitutional power to adjudicate it."  Morrison v. Nat'l

Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) (internal

quotation marks and citation omitted).  "In resolving a motion to dismiss under Rule 12(b)(1), the

district court must take all uncontroverted facts in the complaint . . . as true, and draw all

reasonable inferences in favor of the party asserting jurisdiction."  Tandon v. Captain's Cove

Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (citing Amidax Trading Grp. v.

S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).  However, "[w]here

---

[4]  All references to page numbers correspond to the page numbers designated by this District's
Electronic Case Files ("ECF") system.

jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks and citations omitted).

### B.    Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish an entitlement to relief]." Iqbal, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) and Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

"Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).  In resolving a motion to dismiss, "a district court . . . may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." Kramer, 937 F.2d at 773; see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, . . . matters of which a court may take judicial notice.").

## II.    ANALYSIS

### A.    Mootness

MetLife contends that Plaintiff's claim must be dismissed pursuant to Rule 12(b)(1) as moot, "because MetLife has paid Ms. Stewart all the FEGLI benefits she is owed[.]" (Def. Br. (Dkt. No. 27) at 18)  Mootness is "a threshold matter" that must be addressed before proceeding to the merits. Rodriguez v. Barr, 943 F.3d 134, 141 (2d Cir. 2019).

#### 1.    Applicable Law

Federal court jurisdiction is limited to "'actual cases or controversies.'" Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. E. Kentucky Welfare Rts. Org., 426 U.S. 26, 37 (1976)).  "To state a case or controversy under Article III, a plaintiff must establish standing." Arizona Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 133 (2011).  The "'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins,

578 U.S. 330, 338 (2016) (internal citation omitted) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

The case-or-controversy requirement "manifests in three distinct legal inquiries[, however,]:  standing, mootness, and ripeness."  Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc., 906 F.3d 215, 221 (2d Cir. 2018).  Although standing and mootness are related concepts – mootness has been described as "the doctrine of standing set in a time frame," U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) – they are nonetheless distinct, as the Supreme Court has explained:

> At all stages of litigation, a plaintiff must maintain a personal interest in the dispute.  The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings.  To demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury.  And if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot.

Uzuegbunam v. Preczewski, 592 U.S. 279, 282 (2021).

In sum, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."  Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 72 (2013) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477-478 (1990)).  "A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever to the prevailing party.'"  Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 307 (2012) (quoting City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000)).  In other words, a plaintiff must be afforded "complete relief" in order for their claims to be moot.  Radha Geismann, M.D., P.C. v. ZocDoc, Inc., 909 F.3d 534, 543 (2d Cir. 2018).

A Rule 12(b)(1) motion is the proper vehicle for raising a mootness challenge.  See Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action.") (alterations and internal quotation marks omitted); Jones-Bartley v. McCabe, Weisberg & Conway, P.C., 59 F. Supp. 3d 617, 624 (S.D.N.Y. 2014) ("Dismissal under Rule 12(b)(1) is . . . proper when a case becomes moot.").  On a Rule 12(b)(1) motion, "plaintiff bears the burden of proving subject matter jurisdiction," Aurecchione v. Schoolman Trasp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005), but "the burden of showing mootness logically falls on a defendant."  Mhany Mgmt., Inc. v. Cnty. of Nassau, 819 F.3d 581, 603 (2d Cir. 2016).

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based."  Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016).  A facial motion is "based solely on the allegations of the complaint or the complaint and exhibits attached to it[.]"  Id.  "Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading."  Id. at 57.  "In opposition to such a motion, [a plaintiff] will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."  Id. (quoting Exch. Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)).  "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing."  Id.; see also Paul v. Decker, No. 20 CIV. 2425 (KPF), 2021 WL 1947776, at *3-4 (S.D.N.Y. May 14, 2021) (applying the above principles from Carter to a Rule 12(b)(1) motion premised on alleged mootness).  And where jurisdiction is "'so intertwined with the merits that its resolution depends on the resolution of the merits,'" courts use the standard

"'applicable to a motion for summary judgment'" in deciding jurisdictional facts. <u>London v.
Polishook</u>, 189 F.3d 196, 198-99 (2d Cir. 1999) (quoting <u>Careau Group v. United Farm Workers of
Am., AFL–CIO</u>, 940 F.2d 1291, 1293 (9th Cir. 1991)).

"[D]istrict courts have broad discretion when determining how to consider
challenges to subject matter jurisdiction." <u>Harty v. W. Point Realty, Inc.</u>, 28 F.4th 435, 441 (2d
Cir. 2022). For example, "evidentiary production via affidavits, and even limited jurisdictional
discovery, may sometimes be appropriate to resolve a fact-based Rule 12(b)(1) standing
challenge[.]" <u>Katz v. Donna Karan Co., L.L.C.</u>, 872 F.3d 114, 121 (2d Cir. 2017).

A defendant bears a "heavy burden" in arguing mootness. <u>Lillbask ex rel.
Mauclaire v. State of Conn. Dep't of Educ.</u>, 397 F.3d 77, 84 (2d Cir. 2005)

### 2.    <u>Analysis</u>

The Complaint alleges that MetLife "breached the terms of the FEGLI Policy by
failing to pay Plaintiff and class members in compliance with the order of precedence set forth in
5 U.S.C. § 8705(a)." (Cmplt. (Dkt. No. 1) ¶ 54) As discussed above, on November 23, 2021,
MetLife sent Plaintiff a check for $3,945.45, reflecting her remaining interest in the proceeds
from the FEGLI policy. (<u>See</u> Cohen Decl., Ex. 8 (Dkt. No. 28-8) at 3; Cmplt. (Dkt. No. 1) ¶ 17
("Plaintiff . . . retains an interest in $3,945 of Ms. Flowers' FEGLI coverage.")) Plaintiff rejected
the check (<u>see</u> Cohen Decl., Ex. 10 (Dkt. No. 28-10) at 2), stating that she wishes to pursue this
litigation.

MetLife argues that Plaintiff's breach of contract claim is moot, because MetLife
"has already paid in full any FEGLI benefits that she could potentially obtain through this
action." (Def. Br. (Dkt. No. 27) at 18) According to MetLife's moving brief, MetLife sent
Plaintiff the check "[i]n the ordinary course of administering her claim." (<u>Id.</u>; <u>see also</u> Pollock
Decl. (Dkt. No. 30) ¶¶ 3-5 (stating that MetLife paid Plaintiff on November 23, 2021, because

"two years had passed from the date of the insured's death and MetLife had received no other claims from other potential claimants"; as a result, Plaintiff "now qualified to receive payment under the FEGLIA, as well as the maximum available two-years' statutory interest"))

In moving to dismiss on mootness grounds, MetLife relies on Eleventh Circuit cases stating the general principle that where "an insurance company has 'paid all benefits in full . . . [t]here is no case or controversy[.]'" A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co., 925 F.3d 1205, 1212 (11th Cir. 2019) (quoting Harrison v. United States Mine Workers of Am. 1974 Ben. Plan & Tr., 941 F.2d 1190, 1193 (11th Cir. 1991)).

In response, Plaintiff argues that MetLife's claim that it sent her the check in the ordinary course of administering her claim is a "pretextual . . . post hoc justification." (Pltf. Opp. (Dkt. No. 31) at 18) According to Plaintiff, the transmission of the check is more analogous to a settlement offer pursuant to Fed. R. Civ. P. 68. (Id. at 17-20; see also Cohen Decl., Ex. 10 (Dkt. No. 28-10) at 2 (characterizing MetLife's check as an "offer to settle" Plaintiff's individual claim))

The true nature of MetLife's check has ramifications for MetLife's mootness argument. The Supreme Court has made clear that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case[.]" Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 165 (2016). In so ruling, the Court reasoned that – under basic contract principles – "'[a]n unaccepted settlement offer – like any unaccepted contract offer – is a legal nullity, with no operative effect.'" Id. at 162 (quoting Genesis Healthcare Corp., 569 U.S. at 81 (Kagan, J., dissenting)); see also Geismann, 909 F.3d at 543 (extending Campbell-Ewald's reasoning to a Rule 67 deposit of funds with the court).

13

If MetLife's check was sent to Plaintiff in the ordinary course of business, however, some courts might view it as actual payment that could suffice to moot Stewart's claim. For example, in <u>Jarrett v. United States</u>, 79 F.4th 675 (6th Cir. 2023), a tax refund suit against the IRS, the court held that "actual payment – a tender of the money due – . . . gives the plaintiff all the relief she could receive, and as a result moots any claim for damages." <u>Id.</u> at 678. The court further concluded that a post-suit check sent by the IRS to plaintiff for the full amount at issue plus interest constituted "actual payment," even if the check remained uncashed. <u>Id.</u> at 680.

The parties do not address whether the nature of the check that MetLife sent to Plaintiff presents a fact issue, a legal issue, or a mixed question of law or fact. Regardless of how this issue is characterized, MetLife has not demonstrated that it is entitled to judgment as a matter of law at this stage of the proceedings.

To the extent that the nature of the check is viewed as a fact issue, the parties' submissions present factual disputes that cannot be resolved on a motion to dismiss.

Defendant argues that:

> MetLife's payment was not an offer of settlement at all; the words "offer" and "settlement" do not appear anywhere in the correspondence. <u>See</u> Ex. 8. To the contrary, the "Explanation of Claim Benefits" provides that the enclosed check – made out directly to Ms. Stewart – is "for your Federal Employees' Group Life Insurance (FEGLI) claim." <u>Id.</u> at 2. In other words, MetLife simply administered and paid out Ms. Stewart's claim in the ordinary course.

(Def. Br. (Dkt. No. 27) at 23) But MetLife's account of how its check came to be sent to Plaintiff is set forth in Defendant's moving brief. This Court cannot rely on factual allegations set forth in a brief in resolving a motion to dismiss. <u>Sbarra v. Port Auth. of New York & New Jersey</u>, No. 10 CIV. 8580 CM, 2011 WL 4344078, at *9 (S.D.N.Y. Sept. 9, 2011) ("Factual assertions in briefs . . . cannot be considered on a motion to dismiss."); <u>Kulhawik v. Holder</u>, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence.").

14

In any event, Plaintiff contends that "MetLife's 'ordinary course' explanation is simply not credible" and is "pretextual," noting that "MetLife offers no claims processing manuals, declarations, or other evidence of such a 'policy' and instead relies exclusively on the unsworn statement of counsel." (Pltf. Opp. (Dkt. No. 31) at 18)

Counsel have also filed contradictory declarations about their post-complaint communications concerning the nature of MetLife's check. (Compare Naylor Decl. (Dkt. No. 32) ¶ 5 ("[C]ounsel for MetLife stated that MetLife has a formal policy of waiting two years to pay claimants like Ms. Stewart, and now that two years had passed since Ms. Flowers' death . . . , MetLife had decided in 'due course' to pay Ms. Stewart's claim pursuant to MetLife's routine claim processing procedures.") with Pollock Decl. (Dkt. No. 30) ¶ 6 ("At no point has counsel for MetLife communicated to Plaintiff's counsel that MetLife has a policy of waiting to pay claims for FEGLI benefits under Section 8705(b) at the two-year mark after an insured's death under Section 8705(c).")) 

In sum, the parties' submissions present issues of fact that this Court cannot resolve on a motion to dismiss.[5]

---

[5] The parties' factual dispute is also intertwined with the merits of the case, because one of Plaintiff's breach of contract theories is that, according to the FEGLI statute, she was entitled to payment one year after her sister's death. (See Cmplt (Dkt. No. 1) ¶ 32 ("Plaintiff's claim was the only claim Defendant received within one year of Ms. Flowers' death. Accordingly, any persons (if any) who would otherwise have been higher in the order precedence should have been presumed dead and Defendant should have paid Plaintiff's claim, which would have barred recovery by any other person.") Defendants argue, however, that Plaintiff was not entitled to payment under the statute before the two-year mark. (See Def. Br. (Dkt. No. 27) at 25-26 ("[N]o valid claim was established with respect to the specific amount of proceeds to which Ms. Stewart would be entitled prior to the expiration of the two-year period after Ms. Flowers' death.") To the extent that MetLife is correct that payment was not due until two years after the insured's death, its argument that it made payment in the ordinary course of business is strengthened. To the extent that Plaintiff is correct that payment was due after one year, her argument that the check was a settlement offer has added force.

To the extent that the nature of MetLife's check is viewed as presenting a legal issue, MetLife has likewise not demonstrated that it is entitled to judgment as a matter of law at this stage of the proceedings.

As an initial matter, the Eleventh Circuit cases cited by MetLife contain no analysis of the mootness issue. They merely announce that where "an insurance company has 'paid all benefits in full . . . [t]here is no case or controversy[.]'" A&M Gerber Chiropractic, 925 F.3d at 1212 (quoting Harrison, 941 F.2d at 1193). Indeed, in Harrison, the entirety of the mootness analysis is that,

> [a]s to those appellants who have submitted applications, the case is moot. The Plan has approved all of the applications submitted by Black Diamond retirees or their eligible surviving family members and has paid all benefits in full. There is no case or controversy between these appellants and the Plan.

Harrison, 941 F.2d at 1193. Given the cursory analysis in the Eleventh Circuit cases – and the fact that they preceded the Supreme Court's instruction in Campbell-Ewald that "[a]n unaccepted settlement offer . . . is a legal nullity," 577 U.S. at 162 (internal quotations omitted) – they are not persuasive here.

Moreover, while the Second Circuit has not squarely addressed the issue, the weight of authority in the circuit courts is that a post-complaint check sent by a defendant to a plaintiff that remains uncashed does not moot a claim for damages. In Hoekman v. Educ. Minnesota, 41 F.4th 969 (8th Cir. 2022), for example, plaintiffs were state employees who sued unions that represented their local bargaining units. Id. at 974. They sought monetary relief based on the amount of "fair-share" fees that had been deducted from their paychecks for the benefit of the unions. Id. The district court ruled that "claims arising after [a plaintiff's] attempted resignation from the union are moot, because the union sent [that plaintiff] a check for the total amount of post-resignation dues paid, plus interest." Id. at 977. The unions

16

characterized the checks as "actual payment" of the money the plaintiffs sought, but the Eighth Circuit found that "an uncashed check is not materially different from an unaccepted offer of settlement," because "[u]nless the check is cashed, it 'conveys only a hope that the bank account will have the promised funds.'" Id. at 977 (quoting Bais Yaakov of Spring Valley v. ACT, Inc., 12 F.4th 81, 95 (1st Cir. 2021)).

Similarly, in Lutter v. JNESO, 86 F.4th 111 (3d Cir. 2023), plaintiff claimed that a New Jersey statute that determined when she could withdraw her authorization for payroll deductions of union fees violated her First Amendment right against the compelled subsidization of speech. Id. at 121. Plaintiff sought damages from the defendant union for the union dues that were deducted from her paycheck for the ten months after she attempted to withdraw her authorization, but the New Jersey statute prevented her from doing so. Id. After plaintiff filed suit, the union "attempted to refund the dues that she had requested," sending a letter to plaintiff's counsel enclosing a check. Id. at 121-22. The letter explained that the union was not "seeking any conditions or promises from [plaintiff]," and that "[t]he check is sent to refund the dues that were deducted from [her paychecks] after she declared her desire to resign from membership in [the union], along with an amount to reflect accrued interest." Id. at 122 (second and third alterations in original). Plaintiff did not cash the check. Id. The court held that "the post-suit provision of a check for the amount owed for the underlying claims plus interest does not moot [plaintiff's] claims." Id. at 134; see also Bais Yaakov, 12 F.4th at 94-95 (1st Cir. 2021) (defendant sent plaintiff a check for "the most that it [could] recover in [the] lawsuit," together with a "promise[] to honor the check no matter the outcome of the case"; check was not cashed; court found the check insufficient to moot plaintiff's individual damages claim); LaSpina v.

SEIU Pa. State Council, 985 F.3d 278, 288 n.2 (3d Cir. 2021) (suggesting in dicta that plaintiff's "refusal to cash [a] check may be sufficient to defeat mootness").

        And in a case involving strikingly similar facts, the Fourth Circuit rejected the argument that a post-complaint check for the full amount due under a FEGLI policy, plus interest, could moot a plaintiff's claim where that check went uncashed.  In Bennett v. Off. of Fed. Employee's Grp. Life Ins., 683 F. App'x 186 (4th Cir. 2017) (per curiam) (unpublished), plaintiff claimed that she was owed benefits under a FEGLI policy, and that MetLife had improperly paid another beneficiary.  Id. at 188.  Post-complaint, MetLife sent plaintiff a check for the full benefit amount, plus interest.  The check went uncashed.  See Bennett v. Off. of Pers. Mgmt., No. 1:14CV137, 2015 WL 9307278, at *1 (M.D.N.C. Dec. 21, 2015), report and recommendation adopted sub nom. Bennett for Est. of Maynard v. Off. of Pers. Mgmt., No. 1:14CV137, 2016 WL 11585359 (M.D.N.C. Feb. 24, 2016).

        The district court ruled that the check mooted plaintiff's suit, finding that "she has received all the benefits to which she is arguably entitled," and that her "refusal to accept the payment tendered by Defendants does not change the result."  Id. at *3.  The Fourth Circuit reversed, treating MetLife's check as an "offer of settlement" that had been rejected, and concluding that the uncashed check did not moot plaintiff's claims under Campbell-Ewald. Bennett, 684 F. App'x at 188-89.[6]

---

[6]  The Sixth Circuit reached a contrary result in Jarrett v. United States, 79 F.4th 675, 678 (6th Cir. 2023), but that case is distinguishable.  In Jarrett, a taxpayer brought suit against the Internal Revenue Service for a refund, and the IRS responded by issuing a full refund check, which plaintiff did not cash.  Id. at 676.  The Sixth Circuit characterized the check as "actual payment" or "tender" which "gives the plaintiff all the relief she could receive, and as a result moots any claim for damages."  Id. at 678.  The court saw "no reason that mootness should turn on what a taxpayer does with a check any more than it should turn on whether he burns a full cash payment on the spot."  Id. at 680.  The court also reasoned that even "in a world limited to offers and

The Court concludes that MetLife's post-complaint mailing of a check to Plaintiff does not moot her claim, particularly given that Plaintiff has brought a putative class action. A contrary conclusion "would risk placing the defendant in control of a putative class action, effectively allowing the use of tactical procedural maneuvers to thwart class litigation at will." Geismann, 909 F.3d at 543.[7]

### B.    Failure to State a Claim

In moving to dismiss, MetLife also argues that the Complaint does not allege a plausible breach of contract claim. (See Def. Br. (Dkt. No. 27) at 24-29)

---

acceptances, it seems more apt to characterize Jarrett's request for a refund as an offer that the government accepted by mailing a check." Id. at 681.

In rejecting plaintiff's argument that the check did not moot the case, the Jarrett court relied on the fact that "[r]efund lawsuits exist for a single purpose: 'the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected.'" Id. at 679 (quoting 28 U.S.C. § 1346(a)(1)). Here, the nature of the suit is not limited by statute. Moreover, IRS-specific laws provide that the IRS's payment obligation is satisfied when a refund check is mailed, regardless of what the check's recipient does with the check. See id. at 680; 26 U.S.C. § 6ll(b)(2) (providing that the IRS's obligation to pay interest ends with transmission of a refund check, "whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer")).

The Jarrett court also distinguished Campbell-Ewald by noting that it involved a putative class action, "which poses unique complications" in connection with a mootness determination. Id. Here, of course, Plaintiff has brought a putative class action. (See Cmplt. (Dkt. No. 1) ¶¶ 34-48)

Because Jarrett relies in significant part on the unique nature of a tax refund suit and the fact that the suit had not been brought as a class action, the case is not persuasive here.

[7] Because Plaintiff's individual claim is not moot, the Court need not address the parties' arguments regarding the class action-specific mootness doctrine applicable to "inherently transitory" claims. (See Pltf. Opp. (Dkt. No. 31) at 20-21; Def. Reply (Dkt. No. 29) at 10). Although "the application of the mootness doctrine in class action cases is complex, and hinges on the timing of the certification of the class," Elisa W. v. City of New York, No. 15-CV-5273 (LTS), 2017 WL 3841868, at *2 (S.D.N.Y. Sept. 1, 2017), "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." Campbell-Ewald, 577 U.S. at 165.

1.    **Applicable Law**

a.    **Breach of Contract**

"To make out a viable claim for breach of contract [under New York law,] a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)).[8]

b.    **The Federal Employees' Group Life Insurance Act**

The Federal Employees' Group Life Insurance Act (the "FEGLI Act") establishes a life insurance program for federal employees. The program is administered by the federal Office of Personnel Management ("OPM"). 5 U.S.C. § 8716. "Pursuant to the authority granted to it [in the FEGLI Act], OPM entered into a life insurance contract with the Metropolitan Life Insurance Company" (the "FEGLI Contract"). Hillman v. Maretta, 569 U.S. 483, 486 (2013) (citing 5 U.S.C. § 8709 and 5 C.F.R. § 870.102). "Individual employees enrolled in the [FEGLI] Program receive coverage through this contract." Id. "OPM administers [the FEGLI Act] and

---

[8] The parties do not address what law applies to Plaintiff's breach of contract claim. MetLife relies on New York law in its brief (See Def. Br. (Dkt. No. 27) at 24 (citing Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004) and JP Morgan Chase v. J.H. Elec. of N.Y., Inc., 893 N.Y.S. 2d 237 (2d Dept. 2010))), and Plaintiff does not object to the application of New York law. Given these circumstances, the Court will apply New York law. See Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) (where the parties' briefing assumes the application of a certain forum's law, that constitutes "implied consent" that is "sufficient to establish choice of law") (internal quotations and citation omitted); Mahoney v. Endo Health Sols., Inc., No. 15CV9841(DLC), 2016 WL 3951185, at *3 n.3 (S.D.N.Y. July 20, 2016) ("The defendants rely on New York law in their briefs, and the plaintiff impliedly consents to the application of New York law by failing to argue that another law should apply."); but see Herrera v. Metro. Life Ins. Co., No. 11 CIV. 1901 LAK, 2011 WL 6415058, at *5 (S.D.N.Y. Dec. 19, 2011) (characterizing an alleged breach of a FEGLI policy as "a federal common law breach of contract claim as to which the Court must look to state law for guidance albeit not a binding rule of decision").

has the authority to 'prescribe regulations necessary to carry out' [the Act's] purposes." Metro.
Life Ins. Co. v. Christ, 979 F.2d 575, 576 (7th Cir. 1992) (quoting 5 U.S.C. § 8716). MetLife
created the Office of Federal Employees Group Life Insurance to administer and adjudicate
claims under the FEGLI program. "In this regard, OPM operates as an insurance policy holder,
while MetLife operates as a policy issuer." Bennett v. Off. of Pers. Mgmt., No. 1:14CV137, 2014
WL 5410264, at *1 (M.D.N.C. Oct. 22, 2014), report and recommendation adopted, No.
1:14CV137, 2014 WL 7151748 (M.D.N.C. Dec. 15, 2014).

Section 2.6 of the FEGLI Contract[9] governs the payment of claims. This
provision states that MetLife's Office of Federal Employees' Group Life Insurance "shall pay the
Insurance in Force (plus applicable interest) of the Insured Person based on receipt of
satisfactory written proof [of coverage and death]." (Cohen Decl., Ex. 1 (Dkt. No. 28-1) § 2.6(a))
Generally, the necessary proof for a claim is a "Government Agency or OPM certification of
coverage . . . and a certified death certificate[.]" (Id.) MetLife may, however, "request any
additional information needed to comply with this Section [2.6] and shall not pay Benefits until it
is reasonably satisfied that payment of benefits would not be in violation of this Section." (Id. §
2.6(e))

---

[9]  Although the FEGLI Contract is not attached as an exhibit to the Complaint, the Court may
consider it in connection with Defendant's Rule 12(b)(6) motion to dismiss, because the FEGLI
Contract is incorporated by reference in the Complaint. DiFolco, 622 F.3d at 111. "In insurance
disputes in particular, courts may consider the insurance policies themselves, even if they are not
attached to the plaintiff's complaint." Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd., No.
20CV3350PGGRWL, 2021 WL 1034259, at *3 (S.D.N.Y. Mar. 18, 2021), report and
recommendation adopted, No. 20CIV3350PGGRWL, 2022 WL 558145 (S.D.N.Y. Feb. 24,
2022); see also Carruthers v. Flaum, 365 F. Supp. 2d 449, 454 (S.D.N.Y. 2005) ("[I]t is well
settled that on a motion to dismiss, where the validity of contracts is challenged, the court may
review and properly consider the terms of the contracts that were referenced in the pleadings.").

The FEGLI Program Handbook[10] similarly provides that MetLife's Office of Federal Employees' Group Life Insurance "can only pay death benefits after it has received" the claim, satisfactory proof of death, proof of coverage, and "[o]ther supporting documentation as appropriate," whether "court orders, assignments, powers of attorney, birth certificates, guardianship papers, [or] election forms verifying FEGLI coverage." (Cohen Decl., Ex. 2 (Dkt. No. 28-2) at 16)

Section 2.6 of the FEGLI Contract also directs MetLife to "undertake reasonable efforts to locate Beneficiaries, including contacting surviving family members of the Insured Person to determine the whereabouts and contact information of any and all Beneficiaries." (Cohen Decl., Ex. 1 (Dkt. No. 28-1) § 2.6(f))  Section 2.6 further provides that MetLife's "determination as to the entitlement to payment of Benefits is to be given full force and effect, unless it can be shown that the determination was arbitrary and capricious." (Id. § 2.6(a))

As discussed above, under the FEGLI Act, claims are payable "on the establishment of a valid claim" in the order of precedence established by statute. See 5 U.S.C. § 8705(a).  The sixth order of precedence is "other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death." Id.

The FEGLI Act also addresses payment of benefits where no claim is filed within (1) one year of the insured employee's death; or (2) two years of the insured employee's death:

> (b) If, within 1 year after the death of the employee, no claim for payment has been filed by a person entitled under the order of precedence named by subsection

---

[10]  The FEGLI Program Handbook is promulgated by OPM, and the Court may take judicial notice of its contents in connection with MetLife's Rule 12(b)(6) motion. See Schwartz v. U.S. Off. Of Pers. Mgmt., No. CIV.A. DKC 12-1567, 2013 WL 5428719, at *5 (D. Md. Sept. 25, 2013) (relying on the FEGLI Program Handbook); Laporte v. United States, No. 09-CV-7247 KMK, 2011 WL 3678872, at *6 n.7 (S.D.N.Y. Aug. 19, 2011) (same); Bennett, 2014 WL 5410264, at *1 n.2 (same).  Plaintiff also relies on the FEGLI Program Handbook in opposing Defendant's motion to dismiss. (Pltf. Opp. (Dkt. No. 31) at 23, 25-27)

(a) of this section, or if payment to the person within that period is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if the person had predeceased the employee, and the payment bars recovery by any other person.

(c) If, within 2 years after the death of the employee, no claim for payment has been filed by a person entitled under the order of precedence named by subsection (a) of this section, and neither the Office nor the administrative office established by the company concerned pursuant to section 8709(b) of this title has received notice that such a claim will be made, payment may be made to the claimant who in the judgment of the Office is equitably entitled thereto, and the payment bars recovery by any other person.

5 U.S.C. §§ 8705(b), (c).

## 2. <u>Analysis</u>

Here, Plaintiff alleges in the Complaint: (1) the existence of an agreement (the FEGLI Contract) (Cmplt. (Dkt. No. 1) ¶ 51); (2) adequate performance by her (in submitting a valid claim for benefits) (id. ¶ 18); (3) a breach by MetLife (in failing to make payment to her) (id. ¶ 30); and (4) damages (the non-assigned proceeds of the FEGLI policy) (id. ¶¶ 17, 55).

In this regard, the Complaint alleges that "Ms. Flowers' designated beneficiary had predeceased her, she was not married at the time of her death (she had divorced in 1975), she had no children, both her parents pre-deceased her, and no estate was opened after her death." As a result, Plaintiff – as Flowers' sister – is "the next of kin entitled under the laws of Texas, where Ms. Flowers was living at the time of her death." (Id. ¶¶ 14, 16) Although Plaintiff submitted a valid claim for the proceeds of the FEGLI policy, MetLife failed to pay her the benefits, at least as of the filing of the September 29, 2021 Complaint. (Id. ¶¶ 18, 30) MetLife instead directed her to open an estate and initiate a probate court proceeding in order to obtain a muniment of title. (Id. ¶¶ 19-27) Plaintiff goes on to contend that MetLife – in insisting that an estate be opened and a probate proceeding initiated – "breached the terms of the FEGLI Policy

by failing to pay Plaintiff and class members in compliance with the order of precedence set forth in 5 U.S.C. § 8705(a)."  (Id. ¶ 54)

The Complaint also alleges that MetLife breached the FEGLI Contract by failing to pay Plaintiff the policy proceeds one year after Flowers' death, pursuant to 5 U.S.C. § 8705(b). Plaintiff contends that her claim "was the only claim Defendant received within one year of Ms. Flowers' death," and therefore "any persons (if any) who would otherwise have been higher in the order precedence should have been presumed dead and Defendant should have paid Plaintiff's claim, which would have barred recovery by any other person."  (Id. ¶ 32)

MetLife argues that Plaintiff has not stated a plausible claim for breach of contract under either theory.  According to MetLife, Plaintiff (1) did not "establish a valid claim" to FEGLI benefits within the two-year period after Flowers' death (see Def. Br. (Dkt. No. 27) at 24-26); and (2) had no right to payment of the FEGLI policy proceeds within the one-year period after Flowers' death.  (See id. at 26-29)

As to whether Plaintiff established a valid claim to benefits within two years after Flowers' death, the Complaint alleges that none of the circumstances set forth in paragraphs one through five of the statutory order of precedence apply, and that – as Flowers' sister – she is "next of kin" within the meaning of paragraph six.  Given these allegations and Plaintiff's submission of a claim with a certified copy of Flowers' death certificate (see Cmplt. (Dkt. No. 1) ¶ 18), the Court concludes that the Complaint plausibly alleges a "valid claim" to the FEGLI proceeds and MetLife's failure to pay that claim.

MetLife argues, however, that this Court should consider Flowers' obituary, which indicates that while Plaintiff is Flowers' only remaining sibling, Flowers had "a host of nieces and nephews."  (Cohen Decl., Ex. 3 (Dkt. No. 28-3) at 3)  MetLife argues that the obituary

24

indicates that others may be entitled to a portion of Flowers' FEGLI proceeds, and that accordingly MetLife was required to request "appropriate" "supporting documentation," which Stewart did not provide.  (Def. Br. (Dkt. No. 27) at 25; see also Cmplt. (Dkt. No. 1) ¶¶ 22-27 (detailing MetLife's requests to Stewart))  MetLife further contends that – absent the documentation it requested – it could not "establish what percentage of the FEGLI proceeds Stewart was entitled to vis-à-vis Ms. Flowers' other next of kin."  (Def Br. (Dkt. No. 27) at 25 (emphasis in original))   Therefore, "no valid claim was established with respect to the specific amount of proceeds to which Ms. Stewart would be entitled."  (Id. at 25-26)

This Court may not consider Flowers' obituary in connection with MetLife's Rule 12(b)(6) motion to dismiss, however.  The obituary is not attached to the Complaint; it is not incorporated by reference; and it is not integral to the Complaint.  (See generally Cmplt. (Dkt. No. 1))

A document is integral to a complaint where plaintiff "rel[ies] on the terms and effect of [that] document in drafting the complaint . . . . [M]ere notice or possession [of the document] is not enough."  Chambers, 282 F.3d at 153.  And "[a] document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing [her] complaint."  Williams v. City of New York, No. 14-CV-5123 (NRB), 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015) (emphasis in original).  Here, there is no indication that Plaintiff relied on the obituary in drafting her complaint.

MetLife argues, however, that this Court should take judicial notice of the obituary and the information contained within it.  (Def. Reply Br. (Dkt. No. 29) at 12)

As an initial matter, a court can take judicial notice of a fact only where that fact "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For example, a court may generally "take judicial notice of publicly available information including newspaper articles and other public disclosures." Gonzales v. Nat'l Westminster Bank PLC, 847 F. Supp. 2d 567, 569 n.2 (S.D.N.Y. 2012). Here, however, the record does not contain any information as to where MetLife obtained Flowers' alleged obituary, or whether the obituary was ever published. MetLife simply asserts – in its reply brief – that the obituary was "publicly available." (Def. Reply. Br. (Dkt. No. 29) at 12)

And even if this Court could take judicial notice of the alleged obituary, "it [could] do so only for the fact of [its] existence, [and] not for [its] truth." McClean v. Cnty. of Westchester, No. 17-CV-4492 (CS), 2018 WL 6329420, at *5 n.6 (S.D.N.Y. Dec. 3, 2018) (citing Kramer, 937 F.2d at 774). In other words, the Court could not consider Flowers' obituary for the truth of whether she had nieces and nephews who might be potential beneficiaries of the FEGLI policy. Accordingly, the Court will not consider Flowers' alleged obituary in resolving MetLife's motion to dismiss.

Finally, MetLife notes that the FEGLI Program Handbook authorizes it to request "appropriate" "supporting documentation." (Def. Br. (Dkt. No. 27) at 25; see Cohen Decl., Ex. 2 (Dkt. No. 28-2) at 16; see also id., Ex. 1 (Dkt. No. 28-1) § 2.6(e) (provision in the FEGLI Contract stating that MetLife "may request any additional information needed to comply with this Section," such that it is "reasonably satisfied that payment of Benefits would not be in violation of this Section")) In demanding that Plaintiff open an estate and initiate a probate proceeding,

however, MetLife did not request information concerning Flowers' other siblings and their

descendants.  (See Cohen Decl., Exs. 5-7 (Dkt. Nos. 28-5 to 28-7))

Because the Complaint is sufficiently detailed to "allow[] the court to draw the

reasonable inference that the defendant is liable for [breach of contract], Iqbal, 556 U.S. at 678,

MetLife's motion to dismiss will be denied.[11]

## CONCLUSION

For the reasons stated above, MetLife's motion to dismiss is denied.  The Clerk of

Court is directed to terminate the motion (Dkt. No. 26).

In accordance with Rule 16 of the Federal Rules of Civil Procedure, this Court

will conduct a case management conference in this case on **October 22, 2025, at 2:00 p.m.** in

Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York,

New York.

By **October 15, 2025**, the parties will file a joint status letter and an updated

proposed Case Management Plan and Scheduling Order, in accordance with this Court's

Individual Rules of Practice in Civil Cases.  A model Civil Case Management Plan and

---

[11]  Having concluded that the Complaint plausibly alleges a breach of contract premised on
MetLife's demand that Plaintiff open an estate and initiate a probate proceeding, the Court need
not address the parties' dispute about whether 5 U.S.C. § 8705(b) required MetLife to pay
benefits to Plaintiff one year after Flowers' death.  Talkdesk, Inc. v. Unique Travel Corp., No. 23
CIV. 9543 (JPC), 2024 WL 4904684, at *3 n.5 (S.D.N.Y. Nov. 27, 2024)  ("Although the
Complaint pleads multiple breach of contract theories, [plaintiff] need only plausibly plead one
theory for the claim to survive dismissal.") (citing Martin v. Bottom Line Concepts, LLC, 723 F.
Supp. 3d 270, 283 n.6 (S.D.N.Y. 2024) ("A cause of action that is based on one set of facts but
that contains multiple, alternative legal theories supporting relief is still just one 'claim.'"
(internal quotation marks omitted)).

Scheduling Order is available on the Court's website (https://www.nysd.uscourts.gov/hon-paul-

g-gardephe)

Dated:  New York, New York
        September 22, 2025                        SO ORDERED.


                                                 _____
                                                 Paul G. Gardephe
                                                 United States District Judge